USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRENDEN NANCE,

                              Plaintiff,

              -against-

NEW YORK PUBLIC INTEREST RESEARCH
GROUP FUND, INC., NEW YORK PUBLIC
INTEREST RESEARCH GROUP, INC., and BLAIR
HORNER,

                              Defendants.

---

1:23-cv-3030 (MKV)

**OPINION AND ORDER
GRANTING MOTION FOR
SUMMARY JUDGMENT**

**MARY KAY VYSKOCIL, United States District Judge:**

Plaintiff Brenden Nance filed this action against Defendants New York Public Interest Research Group, Inc. ("Group"), New York Public Interest Research Group Fund, Inc. ("Fund"), (collectively "NYPIRG"), and Blair Horner, (collectively, "Defendants") for (1) "associational pregnancy" discrimination in violation of Title VII and the Pregnancy Discrimination Act ("PDA") against NYPIRG (Count One); (2) gender, "associational pregnancy," and familial status discrimination in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") against all defendants (Counts Two and Three); (3) retaliation in violation of Title VII and the PDA against NYPIRG (Count Four), and (4) retaliation in violation of the NYSHRL and the NYCHRL against all defendants (Counts Five and Six). *See* Amended Complaint ("Am. Compl.," [ECF No. 10]).

Now before the Court is Defendants' motion for summary judgment. [ECF No. 45]. In support of their motion, Defendants submit a declaration of counsel attaching numerous exhibits as well as affidavits from individuals directly involved in the dispute. Plaintiff submits in opposition his own inadmissible, obviously defective, self-serving declaration. Because Plaintiff

1

fails to raise any genuine dispute of fact, and Defendants are entitled to judgment as a matter of law, for the reasons stated herein, Defendants' motion for summary judgment is GRANTED.

## BACKGROUND[1]

The parties agree that Defendant Group is a 501(c)(4) student-directed not-for-profit organization that engages college students and other community members on a variety of environmental protection, public health, and good government issues. SOMF ¶ 9. It is undisputed that Defendant Fund is a 501(c)(3) not-for-profit research and public education organization that conducts research, engages in public education, and supports Group's work in New York State. SOMF ¶ 8. And it is undisputed that Defendant Horner is the Executive Director of NYPIRG, SOMF ¶¶ 10, 14, and in his role as Executive Director, Defendant Horner oversees the Community Outreach Department and has the authority to hire and fire employees. SOMF ¶ 16.

It is undisputed that Plaintiff began working at NYPIRG in June 2006. SOMF ¶ 35. The parties do not dispute that, during his tenure, Plaintiff was promoted on numerous occasions, including in or around 2013 when he was promoted to the position of Statewide Outreach Director. SOMF ¶ 36. The parties agree that in that role, Plaintiff ran the outreach operations to meet fundraising goals, including that he oversaw both the door-to-door outreach program, which operated during the summer, and the telephone outreach program. SOMF ¶ 40. It is undisputed that Plaintiff's duties and responsibilities included, *inter alia*, assigning donor contact information to fundraisers. SOMF ¶ 42.

---

[1] The citations to "SOMF ¶" are references to the facts contained in the parties' combined Rule 56.1 Statements. [ECF No. 66]. In support of their motion Defendants filed a memorandum of law in support, ("Defs. Mem.," [ECF No. 50]), an affirmation of Felice B. Ekelman, Esq., attaching nineteen exhibits [ECF No. 47], a declaration of Defendant Horner with two exhibits [ECF No. 48], and a declaration of Marvin Shleton attaching two exhibits [ECF No. 49]. Plaintiff opposes the motion for summary judgment, ("Pl. Opp.," [ECF No. 64]), and in support submitted declarations of Plaintiff Nance and of Alexandra Kirkpatrick [ECF No. 63]. Defendants replied. ("Defs. Reply.," [ECF No. 65]). As explained in detail below, there is no genuine dispute as to any material fact because Defendants meet their initial burden of providing evidence of the absence of any genuine dispute of material fact and Plaintiff fails to cite to any admissible evidence to raise a dispute as to such facts.

The parties further agree that the Redress Committee is an internal peer committee tasked with investigating complaints made by employees.  SOMF ¶ 29.  It is undisputed that in September 2017, Kristin Nance, Plaintiff's partner and a former NYPIRG employee, filed a complaint with the Redress Committee, claiming that she was discriminated against due to her pregnancy.  SOMF ¶ 49.  The parties agree that at the time that Kristin Nance filed her complaint with the Redress Committee, she was romantically involved with Plaintiff.  SOMF ¶ 50.  It is also undisputed that Plaintiff submitted to the Redress Committee a letter in support of Ms. Nance's complaint.  SOMF ¶ 50.

The parties agree that Ms. Nance eventually commenced a lawsuit against NYPIRG, which was ultimately voluntarily dismissed in January 2020.  SOMF ¶ 52.  Plaintiff was not required to use any vacation days for the absences related to Ms. Nance's lawsuit and he was paid for attending any related depositions or mediations.  SOMF ¶ 52.  It is undisputed that Plaintiff and his partner eventually married and had a child.  SOMF ¶ 53.  The parties agree that Plaintiff took a paid paternity leave from May 24, 2018 to August 28, 2018.  SOMF ¶ 53.

It is undisputed that Plaintiff's salary was incrementally increased over the years of his employment from initially $38,500.08 in 2012 to ultimately $90,000.  SOMF ¶¶ 54–55, 57, 58–63, 66, 68.  The parties agree that Plaintiff's salary remained at $90,000 until his resignation in 2021.  SOMF ¶ 73.  As a result of the salary increase to $90,000, Plaintiff became one of the highest paid staff members.  SOMF ¶ 83.  Specifically, it is undisputed that in 2018 there were only three individuals within NYPIRG who earned more than Plaintiff, SOMF ¶ 85, in 2019 there was only one individual within NYPRIG who earned more than Plaintiff, SOMF ¶ 86, in 2020, there were two people who earned more than Plaintiff, SOMF ¶ 87, and in 2021 there were three individuals who earned more than Plaintiff.  SOMF ¶ 88.

In addition to his salary, at various points Plaintiff earned commissions. Specifically, that parties agree that Plaintiff earned commissions of approximately $1,630.20 in 2016, $76 in 2017, $24 in 2018, and $196.50 in 2019. SOMF ¶¶ 62, 64, 66. It is undisputed that Plaintiff earned no commissions in 2020 and 2021. SOMF ¶ 71. Defendants assert that part of the rationale for Plaintiff's consistent salary increases was the fact that Plaintiff had to give up fundraising, and any associated commissions, to devote his time to managing the Community Outreach Department. It is also undisputed that no employees with a base salary of $90,000, other than Plaintiff, received any commission from 2018 to 2021. SOMF ¶¶ 89, 90.

The parties agree that on May 31, 2019, Plaintiff submitted a complaint to the Redress Committee complaining about retaliation and a hostile work environment. SOMF ¶ 98. Specifically, Plaintiff claimed that Defendant Horner was treating Plaintiff unfairly as a result of his support for his wife's prior pregnancy discrimination claim. SOMF ¶ 99. Amy Serino, Esq., a third party, was retained by NYPIRG to investigate Plaintiff's complaint. SOMF ¶ 101. It is undisputed that Plaintiff believed he had adequate time and opportunity to provide Ms. Serino with all the information she would need for her investigation into his claims. SOMF ¶ 106.

Particularly relevant here, Ms. Serino found that the reduction in work assigned to Plaintiff after his return from parental leave was caused by the addition of a new staff member to fill the Environmental Policy Director position. SOMF ¶ 114. Additionally, Ms. Serino found that the exclusion of Plaintiff from two meetings with NYPIRG's pro bono counsel regarding litigation strategy and the outside counsel relationship was because of the overarching prerogative of the Executive Director and General Counsel to engage in discussions regarding the organization's litigation priorities. SOMF ¶ 115. Furthermore, Ms. Serino found that the one-on-one meetings between Defendant Horner and Plaintiff's direct reports were Defendant Horner merely following

up on comments made by those individuals regarding inefficiencies.  SOMF ¶ 116.  Finally, Ms. Serino found that the alleged unavailability of Defendant Horner to meet with or timely respond to Plaintiff was the result of him being unusually busy and as a result, other staffers also had difficulty connecting with him during this period.  SOMF ¶ 117.

The parties agree that during the COVID-19 pandemic, NYPIRG was unable to conduct its summer outreach through door-to-door canvassing as was normally done in past years.  SOMF ¶ 44.  It is undisputed that Plaintiff was in charge of running a new and untested program which for the first time moved all of NYPIRG's summer fundraising efforts exclusively to phone outreach.  SOMF ¶¶ 45, 47, 123, 126.  The parties agree that this responsibility included Plaintiff developing a protocol for distribution of donor contact information to fundraisers in an impartial and fair manner, SOMF ¶¶ 46, 132, 135, keeping track of solicitations for donations and collecting donations made by credit card.  SOMF ¶ 127.  Not all employees could be dedicated to fundraising (which is where commissions were earned) because other tasks like programming, technology support, and outreach needed to continue and needed to be managed.  SOMF ¶ 48.  Specifically, Defendant Horner wanted Plaintiff to focus on managing the untested fundraising program because if the program was mismanaged during this time, the loss of income to NYPRIG would be "far greater than any one person could bring in."  SOMF ¶ 129.  Additionally, Defendant Horner wanted to ensure that the lower earners had the opportunity to make commissions.  SOMF ¶ 130.  Finally, there was also a concern that there would be an appearance of unfairness if Plaintiff participated in the fundraising and earned commissions because Plaintiff had the power to distribute the telephone canvass assignments and was also in charge of resolving any disputes over those assignments.  SOMF ¶131.

The parties agree that in May 2020, Plaintiff submitted another complaint of retaliation to the Redress Committee alleging that Defendant Horner was purposefully excluding Plaintiff from fundraising. SOMF ¶ 140. Specifically, Plaintiff believed that he was the only NYPIRG employee excluded from the opportunity to fundraise. SOMF ¶ 140. It is undisputed that the Redress Committee members investigating this complaint were Mr. Abdallah, Ms. Cohn, and Ms. Mihailovich. SOMF ¶ 142. The Redress Committee found that no other department heads were fundraising that summer and the only individual whom Plaintiff had identified as potentially being given the opportunity to fundraise denied that it was a serious offer. SOMF ¶ 174.

In June 2021, Defendant Horner requested Plaintiff to train a colleague, Mr. O'Connor, head of NYPIRG's Fuel Buyers Group to engage in in-person solicitation of donations from donors in Rochester, New York. SOMF ¶ 157. The parties agree that Mr. O'Connor earned $1,247 in commissions in 2021 on top of his base salary of $57,000 per year. SOMF ¶ 160. Other than the request to solicit from these specific donors, Mr. O'Connor had no involvement in the summer canvassing or donor solicitation that year. SOMF ¶ 159. The parties agree during that same month, Plaintiff sent an email to several NYPIRG employees, including some members of the Redress Committee to complain that he believed it was unfair that Mr. O'Connor was offered the opportunity to fundraise. SOMF ¶¶ 161–62. It is undisputed that shortly thereafter, on June 11, 2021, Plaintiff submitted his letter of resignation. SOMF ¶ 166. There is no dispute that Plaintiff ceased his employment at NYPIRG on June 25, 2021. SOMF ¶ 166.

It is undisputed that Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 19, 2022. SOMF ¶ 1. On September 22, 2022, Plaintiff was issued a Dismissal and Notice of Rights from the EEOC. SOMF ¶ 2. And Plaintiff filed the initial complaint against Defendants in this action on December 21, 2022. SOMF ¶ 4.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

"[I]f there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party that supports a finding that a material factual dispute exists, summary judgment is improper." *United Rentals (N. America), Inc. v. Conti Enters., Inc.*, 293 F. Supp. 3d 447, 451 (S.D.N.Y. 2018) (citing *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)). The Court's role on a motion for summary judgment is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted). The Court "may not make credibility determinations or weigh the evidence." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).

Crucially, the Court considers "only admissible evidence." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *see* Fed. R. Civ. P. 56(c). Moreover, the Second Circuit has explained, "it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment." *Id.* "As a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial." *Id.* (citation omitted). Thus, "on summary judgment, a district court 'has wide discretion in determining which evidence is admissible.'" *LaSalle Bank Nat. Ass'n v. Nomura Asset Cap.*

*Corp.*, 424 F.3d 195, 205–06 (2d Cir. 2005) (quoting *Nora Beverages, Inc. v. Perrier Group of America., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998)).

To overcome summary judgment the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts' and 'may not rely on conclusory allegations or unsubstantiated speculation.' " *Brooklyn Ctr. For Indep. of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 64 (2d Cir. 2021) (first quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); then quoting *FDIC v. Great American. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)). "An adverse party may not rest upon mere conclusory allegations or denials" in a self-serving declaration that is not supported by other evidence to raise a triable issue of material fact. *789 Ninth & 414 E. 74th Assocs. LLC v. Hundalani*, No. 21-CV-5314, 2023 WL 4472162, at *4 (S.D.N.Y. July 11, 2023); *see also Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009); *Dreni v. PrinterOn America Corp.*, No. 18-CV-12017, 2021 WL 4066635, at *13 (S.D.N.Y. Sept. 3, 2021).

## DISCUSSION

### I. There Are No Genuine Disputes of Material Fact

Defendants argue that Plaintiff's Counterstatement to Defendants' 56.1 Statement does not comply with Local Civil Rule 56.1, Rule 56 of the Federal Rules of Civil Procedure, and this Court's Individual Rules of Practice in Civil Cases. *See e.g.*, Defs. Reply at 4–5. In particular, Defendants argue that Plaintiff consistently failed to cite *any* admissible evidence when purporting to raise a dispute of fact. Defendants are correct.

#### A. *Governing Rules on Motion for Summary Judgment*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, where a party asserts that a fact is genuinely disputed that party "must support the assertion" of a genuine dispute by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). That is, the party must cite to

specific *admissible* evidence.  *See id.*; *Raskin*, 125 F.3d at 66.  Moreover, where the party "fails to properly address another party's assertion of fact as required by Rule 56(c)," by citing specific admissible evidence, the district court may "consider the fact undisputed for purposes of the motion" for summary judgment.  Fed. R. Civ. P. 56(e)(2); *see Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014).

Similarly, Local Civil Rule 56.1 requires a party submitting a "counterstatement" in opposition to a motion for summary judgment to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts."  Local Civil Rule 56.1(b), (e).  "Each statement by the movant or opponent . . . including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible."  Local Civil Rule. 56.1(d).  "Local Rule 56.1 states that the moving party's 56.1 statement will be deemed to be admitted unless controverted . . . and requires that such denials be supported by a specific citation to admissible evidence."  *Ezagui v. City of New York*, 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010) (internal quotation marks and citations omitted).  This Court's Individual Rules require a party opposing summary judgment to comply with Local Civil Rule 56.1.  *See* Rule 5(C).

Here, Defendants carried their initial burden to come forward with admissible evidence demonstrating the absence of disputed facts.  *See Celotex*, 477 U.S. at 323; *see generally* SOMF [ECF No. 66]; Ekelman Aff. [ECF No. 47]; Horner Decl. [ECF No. 48]; Shleton Decl. [ECF No. 49]; and the exhibits attached thereto.  Thus, pursuant to applicable Federal, Local, and Individual Rules, Plaintiff was required to specifically dispute Defendants' assertions of fact with citations to specific supporting admissible evidence.  *See Giannullo v. City of New York*, 322 F.3d 139, 140

(2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). However, Plaintiff failed egregiously to comply with these rules and failed to raise any genuine dispute of material fact.

In particular, in most instances in which Plaintiff purports to dispute an assertion of fact, Plaintiff fails to explain what specifically he disputes and fails to cite *any* evidence in the record whatsoever. Where Plaintiff does offer a citation to the record, he overwhelmingly cites only his own inadmissible, glaringly defective, self-serving declaration. The only other evidence he cites, the declaration of a former co-worker, is likewise obviously inadmissible.

### B. *Plaintiff's Declaration Is Not Admissible.*

As the Second Circuit has explained, "the purpose of summary judgment is to weed out cases" in which there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *Raskin*, 125 F.3d at 66. As such, in ruling on a motion for summary judgment, a court considers "only admissible evidence," and "it is appropriate for district courts to decide questions regarding the admissibility of evidence." *Id*. The Second Circuit has further stressed the "wide discretion" of a district court in determining the admissibility of evidence submitted in connection with a motion for summary judgment. *LaSalle Bank Nat. Ass'n*, 424 F.3d at 205; *Nora Beverages, Inc.*, 164 F.3d at 746.

Defendants persuasively attack the admissibility of Plaintiff's Declaration, which provides the only purported support for any purported dispute of material fact in this case. *See, e.g.*, SOMF ¶ 28.1; *id. passim*; Defs. Reply at 5 n.5. In particular, Defendants stress, Plaintiff failed to provide a wet-ink signature, the document is not notarized, ***Plaintiff's name is spelled incorrectly in his own purported electronic signature***, Plaintiff's name is misspelled in several other places, the text of the declaration repeatedly switches between a first-person and third-person account of facts, and

10

there are statements that are "copied and pasted" from a version of the 56.1 Counterstatement that was created "nearly two months before Plaintiff allegedly signed the Declaration." SOMF ¶ 28.1; *see id. passim*; Defs. Reply at 5 n.5.

To be sure, Defendants flesh out this argument in their reply papers. While courts typically do not consider arguments raise in reply, the Second Circuit has held that "reply papers may properly address new material issues raised in the opposition papers." *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226 (2d Cir. 2000). Plaintiff submitted his Declaration with his opposition to the motion for summary judgment [ECF No. 63]. As such, Defendants attacked Plaintiff's Declaration at their first opportunity to do so.

Plaintiff, by contrast, failed to request the opportunity to file a sur-reply or otherwise to respond to the attack on the admissibility of Plaintiff's Declaration. It is well-established that a "plaintiff effectively concedes a defendant's arguments by his failure to respond to them." *Felske v. Hirschmann*, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) (citing *Rosenblatt v. City of N.Y.*, No. 5-CV-5521, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007)); *see  Scott v. JPMorgan Chase & Co.*, No. 13-CV-646, 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) (dismissing claims because the plaintiff "failed to respond," and thus "effectively concede[d]," an argument with "conclusive effect") (collecting cases), *aff'd*, 603 F. App'x 33 (2d Cir. 2015); *Tlapanco v. Elges*, No. 15-CV-2852, 2017 WL 4329789, at *4 (S.D.N.Y. Sept. 14, 2017). In any event, as explained above, it is well-established that Plaintiff had the burden to come forward with *admissible* evidence to raise genuine disputes of fact. *See Raskin*, 125 F.3d at 66; *Giannullo*, 322 F.3d at 140; Fed. R. Civ. P. 56(c); Local Civil Rule. 56.1(d). In other words, Defendants gain no "unfair advantage" by pointing out in their reply papers that Plaintiff failed to

offer admissible evidence in opposition to Defendants' motion.  *Bayway Ref. Co.*, 215 F.3d at 226.

In light of the glaring problems with Plaintiff's Declaration, the Court is well within its discretion to rule that Plaintiff's Declaration is inadmissible.  *See LaSalle Bank Nat. Ass'n*, 424 F.3d at 205; *Nora Beverages, Inc.*, 164 F.3d at 746.  It is especially egregious that Plaintiff's own name is misspelled in his own purported electronic signature.  That Plaintiff's name is misspelled suggests that Plaintiff himself did not sign the document.  *See Edwards v. Arocho*, 125 F.4th 336, 348 (2d Cir. 2024) (a declaration is admissible under 28 U.S.C. § 1746 and Federal Rule of Civil Procedure 56(c) where the declaration *is signed by the declarant* and declares under "penalty of perjury" that the "foregoing is true and correct").  Indeed, taken together with the other indicia of unreliability in the document, the Court finds that the misspelling of Plaintiff's name line renders the Declaration effectively unsigned.[2]  *See Rodriguez v. Artuz*, 123 F. App'x 428, 431 (2d Cir. 2005) (affirming state court's finding that an affidavit filed in support of a criminal defendant was "unreliable" and "inadmissible" where, among other deficiencies, the affiant's "own name is misspelled in the affidavit").  District courts commonly conclude that an unsigned declaration has "no evidentiary worth."  *Everytown for Gun Safety Action Fund, Inc. v. Defcad, Inc.*, No. 21-cv-8704 (PGG), 2022 WL 1689638, at *2 (S.D.N.Y. May 26, 2022); *see Romero v. H.B. Auto. Grp., Inc.*, 2012 WL 1514810, at *2 (S.D.N.Y. May 1, 2012) (an unsigned affidavit "is inadmissible" and a court "will not consider it"); *Sam Jin World Trading, Inc. v. M/V Cap San Nicolas*, 2010 WL 267847, at *3 (S.D.N.Y. July 2, 2010) (unsworn affirmations "are inadmissible"); *Pena v. Semple*, 2020 WL 4227709, at *2 n.2 (D. Conn. July 23, 2020) (explaining that "[a] declaration must be

---

[2] While Defendants offer no authority for the propositions that Plaintiff's Declaration must bear a wet ink signature or the stamp of a notary public, such indicia of reliability would have shown that the Declaration was indeed signed by Plaintiff.  The document Plaintiff submitted offers the Court no reliable basis to find that Plaintiff authored or signed it.

signed by the declarant"); *XAC, LLC v. Deep*, No. 107-cv-135, 2011 WL 13351866, at *8 (N.D.N.Y. Oct. 10, 2011) ("an unsigned declaration is not admissible evidence . . . .").

Furthermore, Plaintiff's hearsay statements require "indicia of reliability" to be admissible. *Creese v. City of New York*, 815 F. App'x 586, 590 (2d Cir. 2020); *see also* Fed. R. Evid. 807. Instead, Plaintiff's Declaration is rife with indicia of **un**reliability.  For example, "[a]ffidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge.' "  *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).  Yet, here, the Declaration repeatedly switches between a first-person and third-person account of facts, sometimes within a single paragraph calling into question with Plaintiff wrote this Declaration himself based on his personal knowledge.  [*see* ECF No. 63-1 ¶¶ 12, 21, 23].

Setting aside the various glaring issues with Plaintiff's Declaration, in any event, it is well-established that a plaintiff's own "self-serving declaration[], not supported by evidence, [is] generally not sufficient to create an issue of material fact." *789 Ninth & 414 E. 74th Assocs. LLC*, 2023 WL 4472162, at *4; *see also Deebs*, 346 F. App'x at 656 (2d Cir. 2009) (summary order) (finding that self-serving deposition testimony without "hard evidence adduced during discovery . . . is insufficient to defeat summary judgment"); *Dreni*, 2021 WL 4066635, at *13 (finding that plaintiff's "self-serving deposition testimony and declaration are completely unsupported by the record and therefore cannot create a genuine issue of material fact").

In approximately three instances in his 56.1 Counterstatement, Plaintiff cites generally to the affidavit of a former coworker, Alexandra Kirkpatrick, which contains no admissible evidence. The six-paragraph affidavit asserts Ms. Kirkpatrick's conclusions that Plaintiff "was treated . . . worse" after engaging in "his protected activity" [ECF No. 63-1 at 19].  Ms. Kirkpatrick adds that

she feared that "NYPIRG employees would be less likely to report discrimination" because of the "retaliation" Plaintiff assertedly "receive[d]" [ECF No. 63-1 at 19].  Ms. Kirkpatrick's "conclusory allegations" are not admissible and do not raise a genuine dispute of fact.  *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

Accordingly, the Court concludes that there is no genuine dispute as to any material fact in this case.

II.    **Plaintiff's Claims Against New York Public Interest Research Group, Inc. Fail As a Matter of Law Because Group Was Not Plaintiff's Employer**

As an initial matter, Defendants argued in their moving brief that all claims against Defendant Group should be dismissed because Defendant Group was not Plaintiff's employer.  Defs. Mem. at 28.  Plaintiff failed to respond to or address this argument at all in its opposition brief.  *See generally* Pl. Opp.

Title VII makes it "an unlawful employment practice for *an employer* . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1) (emphasis added).  "The Second Circuit has long held that 'the existence of an employer-employee relationship is a primary element of Title VII claims.' "  *Mumin v. City of New York*, No. 1:23-CV-03932, 2024 WL 5146085, at *21 (S.D.N.Y. Dec. 17, 2024) (quoting *Gulino v. N.Y.S. Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006)).

Defendants urge that since Plaintiff wholly failed to respond to or even acknowledge Defendants' argument that Defendant Group was not Plaintiff's employer, Plaintiff has waived these claims.  Defs. Reply at 2.  The Court agrees.  It is well-established that a "plaintiff effectively concedes a defendant's arguments by his failure to respond to them."  *Felske*, 2012 WL 716632,

at *3 (citing *Rosenblatt*, 2007 WL 2197835, at *7); *see Scott*, 2014 WL 338753, at *10 (dismissing claims because the plaintiff "failed to respond," and thus "effectively concede[d]," an argument with "conclusive effect") (collecting cases), *aff'd*, 603 F. App'x 33 (2d Cir. 2015); *Tlapanco*, 2017 WL 4329789, at *4 (ruling that plaintiff forfeited an argument by failing to raise it in an opposition brief).

Plaintiff failed to respond to Defendants' argument that Defendant Group was not Plaintiff's employer and therefore all claims against Defendant Group are deemed waived and Defendants are entitled to summary judgment on these claims.

### III. Plaintiff's Title VII and PDA Claims Against Defendant Fund Fail as a Matter of Law and Defendant is Entitled to Summary Judgment

Plaintiff alleges discrimination based on his association with his pregnant partner, gender, and family status in violation of Title VII and the PDA. Am. Compl. ¶¶ 183–187. Plaintiff also alleges that he was retaliated against for supporting his pregnant partner in her 2017 internal complaint and subsequent lawsuit against NYPIRG and for making his own complaints to Fund's Redress Committee in violation of Title VII and the PDA. Am. Compl. ¶¶ 198–203.

Defendants argue that they are entitled to summary judgment because (1) Plaintiff's discrimination claims are time-barred, (2) Plaintiff failed to establish a *prima facie* case of discrimination or retaliation, and (3) Plaintiff failed to raise evidence to rebut that Defendants' proof that the allegedly discriminatory conduct was based on legitimate and non-discriminatory reasons. Defs. Mem. at 12–16, 19–23.

#### A. Plaintiff's Title VII and PDA Discrimination and Retaliation Claims Are Time-Barred

"Title VII's administrative exhaustion provision requires that any complaint be filed with the EEOC within 300 days of the alleged discriminatory act." *See McGullam v. Cedar Graphics,*

*Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (citing 42 U.S.C. § 2000e–5(e)(1)); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) (Under Title VII, plaintiffs must file a charge with the EEOC "in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred.").

In *National Railroad Passenger Corporation v. Morgan*, the Supreme Court explained that the word "practice" in Title VII refers to "a discrete act or single 'occurrence.' " 536 U.S. 101, 111 (2002). "Examples of discrete acts include terminating employment, failing to promote, denying a transfer, and refusing to hire." *King v. Aramark Servs. Inc.*, 96 F.4th 546, 559 (2d Cir. 2024) (quoting *Morgan*, 537 U.S. at 114–15). "Because a discrete discriminatory act is individually actionable and 'occurs' on the day that it 'happened,' the 300-day limitations period begins running on the day of each occurrence, meaning each discrete act claim carries its own 300-day limitations period." *Id.* (quoting *Morgan*, 536 U.S. at 110).

The "continuing violation doctrine" creates an exception to the general 300-day rule. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023). "Under the continuing violation doctrine, if 'specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice,' a continuing violation may be found." *Id.* (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996)). If a continuing violation is found then "a court must then consider 'all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred.' " *Id.* (quoting *Van Zant*, 80 F.3d at 713).

Here, the parties agree that Plaintiff filed a Charge of Discrimination with the EEOC on April 19, 2022. SOMF ¶ 1. Therefore, any claims which arose prior to June 23, 2021 (300 days

before the date of filing of his charge with the EEOC) are time-barred under Title VII and cannot be considered by the Court unless saved by an action that took place after June 23, 2021 that was a part of Defendants' purported discriminatory policy or practice.

Plaintiff alleges that all of Plaintiff's retaliation claims stem from the purported discrimination and retaliation inflicted upon him for corroborating and supporting his partner's pregnancy discrimination allegations. Pl. Opp. at 10–11. There is no dispute that Plaintiff's support to his partner's grievance and subsequent lawsuit was provided in the years 2017 through 2019. SOMF ¶¶ 49–53. Plaintiff further argues that his constructive discharge took place on June 25, 2021, his final day of work, and therefore occurred within the 300 day limitations period. Pl Opp. at 9. Plaintiff therefore urges the Court to consider all of the conduct about which he complains, invoking the continuing violation doctrine. Pl. Opp. at 9.

Defendants argue that Plaintiff's purported constructive discharge did not occur on June 25, 2021, his final day of work, but instead his alleged constructive discharge occurred on June 11, 2021, which is the date on which Plaintiff provided notice of his intention to resign. Defs. Mem. at 9–10. Defendants argue that therefore none of the alleged discriminatory or retaliatory actions advanced by Plaintiff occurred within the statute of limitations (*i.e.* after June 23, 2021). The Court agrees.

It is well settled that the statute of limitations for a claim of constructive discharge runs from the date the plaintiff provided the employer with definite notice of his intention to resign. *See Flaherty v. Metromail Corp.*, 235 F.3d 133, 138–39 (2d Cir. 2000) (holding plaintiff's claim accrued on the date she gave definite notice of her intention to retire and stating "it is only the employee who can know when the atmosphere has been made so intolerable by the discrimination-motivated employer that the employee must leave"); *see also Carmellino v. Dist. 20 of New York*

17

*City Dep't of Educ.*, No. 03-CV-5942, 2006 WL 2583019, at *43 (S.D.N.Y. Sept. 6, 2006), *aff'd in part sub nom. Mauskopf v. Dist. 20 of New York City Dep't of Ed.*, 299 F. App'x 100 (2d Cir. 2008), *and aff'd in part sub nom. Papasmiris v. Dist. 20 of New York City Dep't of Ed.*, 299 F. App'x 97 (2d Cir. 2008) (granting summary judgment on plaintiff's constructive discharge claim because plaintiff signed a stipulation which indicated her intent to retire prior to the 300-day period).  Here, it is undisputed that Plaintiff submitted his letter of resignation on June 11, 2021.  SOMF ¶ 166.  Accordingly, Plaintiff's constructive discharge claim is time barred under Title VII because it occurred outside the 300-day time frame.  Further, since the only act that Plaintiff alleged occurred after June 23, 2021 was his alleged constructive discharge, all of Plaintiff's claims under Title VII and the PDA are time-barred and fail as a matter of law.

Accordingly, all of the conduct alleged with respect to Plaintiff's Title VII and PDA claims occurred outside of 300-day period and are time barred, thus entitling Defendants to summary judgment.

B. *Plaintiff' Discrimination Claim Under Title VII and PDA*
   *Based on His Partner's Pregnancy Fail As A Matter of Law*

Even if Plaintiff's claims were not time barred, his claims for "associational pregnancy" discrimination based on his partner's status as a pregnant person also fail as a matter of law.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against any individual on the basis of *the individual's* race, color, religion, sex, or national origin.  *See* 42 U.S.C. § 2000e-2(a)(1); *see also Vengalattore v. Cornell Univ.*, 36 F.4th 87, 103 (2d Cir. 2022).  The Pregnancy Discrimination Act ("PDA") amended Title VII to ensure that the statute's "prohibition against sex discrimination applie[d] to discrimination based on pregnancy." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015)).  In determining whether the plaintiff has shown evidence sufficient to

survive a defendant's summary judgment motion, Title VII and PDA discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)); *see also DeMarco v. CooperVision. Inc.*, 369 F. App'x 254, 55 (2d Cir. 2010) (claims under the PDA are analyzed under the same framework).

Under this legal framework, the plaintiff must first "establish a prima facie case of discrimination by showing that (1) *[he] is a member of a protected class*; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Bart*, 96 F.4th at 570 (internal quotation marks omitted) (emphasis added).

Plaintiff's allegations that he was discriminated against because of his *partner's* pregnancy status do not state a claim under these provisions. Title VII makes it unlawful for an employer to discriminate against "any individual . . . *because of such individual's* race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Accordingly, the limited categories encompassed by Title VII do not include alleged discrimination and/or adverse employment actions based on someone else's sex or pregnancy status. *See Ninying v. N.Y.C. Fire Dep't*, 807 F. App'x 112, 115 n.2 (2d Cir. 2020) ("Title VII does not provide a cause of action based on . . . the protected status of one's spouse."); *see also Ronen v. RedRoute, Inc.*, No. 21-CV-2732, 2025 WL 296551, at *3–5 (E.D.N.Y. Jan. 24, 2025) ("Because [plaintiff] is alleging that [defendant] discharged him because of his *wife*'s protected status, not his own, he has not alleged facts falling within Title VII's prohibition"); *see also Van Soeren v. Disney Streaming Serv.*, No. 19-CV-10196, 2020 WL 6131255, at *3 (S.D.N.Y. Oct. 16, 2020) (Title VII "protects a pregnant employee, it does not protect an employee whose spouse is pregnant."); *Adler v. S. Orangetown*

*Cent. Sch. Dist.*, No. 05-CV-4835, 2008 WL 190585, at *10 (S.D.N.Y. Jan. 17, 2008) (Title VII claim premised on male employee's wife's pregnancy must be dismissed since "[t]his status is not protected by Title VII"); *Marchioli v. Garland Co.*, No. 11-CV-124, 2011 WL 1983350, at *5 (N.D.N.Y. May 20, 2011) (holding that allegation that plaintiff was terminated as "a result of his partner's pregnancy" was not a viable claim under Title VII).

Accordingly, Plaintiff has not plausibly alleged that his employer discriminated against him based on his own protected characteristic and therefore he has not carried his burden of establishing a *prima facie* case. Thus, Plaintiff's claim for discrimination under Title VII and the PDA fail as a matter of law and Defendants are entitled to summary judgment.

### C. Plaintiff Fails to Advance Any Argument or Evidence To Rebut Defendants' Evidence of Proffered Legitimate Non-retaliatory Reasons For The Challenged Actions

Defendants are entitled to summary judgment on the Title VII retaliation claim for the additional reason that Plaintiff wholly fails to address or present any evidence to rebut Defendants' proffered legitimate non-retaliatory reasons for the allegedly adverse actions. This failure is also fatal to Plaintiff's claims and entitles Defendants to summary judgment.

Assuming *arguendo* that Plaintiff has actually provided sufficient admissible evidence to satisfy his burden of demonstrating a *prima facie* case of retaliation under Title VII, the burden shifts to Defendant to "articulat[e] a legitimate, non-retaliatory reason for the adverse employment action." *Ya-Chen Chen*, 805 F.3d at 70.

Plaintiff complains of the following actions in support of his Title VII retaliation claims:

- Plaintiff alleges that he did not receive a compensation increase once he supported his partner's discrimination allegations against Defendants and submitted his own formal complaints;

- Plaintiff claims his job responsibilities were reduced, including Defendants excluding him from two meetings and assigning him administrative tasks such as processing credit cards;

- Plaintiff purports to have received repeated incorrect and critical performance evaluations over a four-year period that corresponded with the initiation of his protected activities;[3] and

- Plaintiff alleges that he was denied the opportunity to participate in fundraising activities that would have allowed him to earn substantial commission income.

*See* Pl. Opp. at 13–14. Even assuming that Plaintiff could satisfy his burden of establishing a *prima facie* case based on these facts, and even if there were genuine disputes with respect to these facts, which the Court concluded there are not, it is immaterial. Defendants have offered evidence in support of their motion for summary judgment, of non-retaliatory reasons for these actions and Plaintiff has failed to offer admissible evidence that those reasons were a pre-text or motivated by retaliation.

Defendants provide evidence that "Horner's directive that Plaintiff not solicit donations but rather focus on the operations of his department was based upon legitimate business purposes." Defs. Mem. at 14; *see also* SOMF ¶ 149; Mihailovich Depo. Tr. at 77:17–87:12; Abdallah Depo. Tr. at 68:10–71:7, 138:18–140:14; Eklman Aff. Ex. N. Specifically, Defendants offer evidence that Defendant Horner wanted Plaintiff to focus on managing the new fundraising operation prompted by the COVID-19 pandemic; Plaintiff's salary was significantly higher than the fundraisers who earned commission; and there were concerns over fairness in the distribution of commission opportunities since Plaintiff oversaw that process. *See* Defs. Mem. 14; SOMF ¶¶ 149–152.

---

[3] The Court notes that Defendants do not seem to assert legitimate business reasons to demonstrate that these evaluations were not motivated by retaliation, but instead asserts that the evaluations Plaintiff complains of were largely positive. Nonetheless, Defendants are entitled to summary judgment for the other reasons discussed in detail above.

Furthermore, the unrebutted evidence proffered by Defendants supports Defendants' contention that Plaintiff was expected to process credit cards during the pandemic because everyone pitched in to ensure that credit card donations were processed, including Defendant Horner. *See* SOMF ¶¶ 136–39. Defendants further offer evidence that after Plaintiff returned from paternity leave, he had slightly different responsibilities and was not included on specific projects because NYPIRG had hired a new staff member, Environmental Policy Director, to handle those specific initiatives and assignments. Defs. Mem. 16; SOMF ¶ 114; Ekelman Aff. Ex. R at 8–10. Defendants also provide evidence to supports its explanation that Plaintiff's exclusion from certain meetings was because his presence was not necessary since the meetings were with NYPIRG's pro bono counsel regarding litigation strategy, and it is within the outside counsel and Executive Director's purview to engage in those discussions. SOMF ¶ 115; Ekelman Aff. Ex. R at 10–11. Defendants also put forward evidence that the certain highlighted one-on-one meetings between Defendant Horner and Plaintiff's direct reports were simply to follow up on comments made by those employees regarding inefficiencies. SOMF ¶ 116; Ekelman Aff., Ex. R at 11–12. Finally Defendants proffer that any inability of Defendant Horner to meet with Plaintiff was because he was unusually busy and other staff members also had difficulty finding time to meet with Defendant Horner. SOMF ¶ 117.

Defendants at this stage, "need not persuade the court that [they were] actually motivated by the proffered reasons." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981). Instead Defendants only need to point to sufficient evidence to meet their burden, *id.*, which they have done here. Therefore, to survive summary judgment the burden shifts to Plaintiff to come forward with evidence that Defendants' "desire to retaliate was [a] but-for cause of the challenged employment action." *Ya-Chen Chen*, 805 F.3d at 70.

In opposition to Defendants' motion, Plaintiff argues only that he has presented sufficient evidence of a *prima facie* case to survive summary judgment. *See* Pl. Opp. 13–14, 17–18. However, that is not the end of the inquiry, and Plaintiff has completely failed to present any argument or evidence that Defendants' proffered justifications for the complained of actions were a pretext and "that retaliation was a substantial reason for the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005); *see* Defs. Reply at 1 ("Plaintiff fails to address these valid business reasons; the word 'pretext' does not appear in his Opposition"), 6, 8.

This total failure to dispute Defendants' offered justifications provides another reason that Defendants are entitled to summary judgment on Plaintiff's retaliation claims under Title VII and PDA. *See Felske*, 2012 WL 716632, at *3 (citing *Rosenblatt*, 2007 WL 2197835, at *7 (It is well-established that a "plaintiff effectively concedes a defendant's arguments by his failure to respond to them."); *see also Scott*, 2014 WL 338753, at *10 (collecting cases), *aff'd*, 603 F. App'x 33 (2d Cir. 2015). Since the burden shifted back to Plaintiff and Plaintiff failed to offer any evidence to satisfy that burden, Defendants are entitled to summary judgment. *See Blaise v. Verizon New York Inc.*, 804 F. App'x 68, 72 (2d Cir. 2020) (summary order) (concluding that since plaintiff "presented no evidence from which a factfinder could conclude that [defendant's] explanation for his termination is pretextual, the district court did not err in granting summary judgment in [defendant's] favor"); *see also Baguer v. Spanish Broad. Sys., Inc.*, 423 F. App'x 102, 103 (2d Cir. 2011) (summary order) (affirming district court's granting of summary judgment and explaining the Court "need not resolve whether [plaintiff] has established such a *prima facie* case" because his Title VII claim is "doomed by his failure to rebut the nondiscriminatory rationale [defendant] articulated for terminating him").

23

Accordingly, Defendants' summary judgment motion as to Plaintiff's Title VII claims is GRANTED.

**IV.    The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining New York State Claims**

NYCHRL and NYSHRL set a different, more liberal standard from Title VII, their federal counterpart. *See e.g.*, *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) (quoting *Mihalik v. Credit Agricole Cheuvreux N. America, Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (NYCHRL must be construed to account for its "uniquely broad and remedial purposes"); *see also Kulick v. Gordon Prop. Grp., LLC*, No. 23-CV-9928, 2025 WL 448333, *8 (S.D.N.Y. Feb. 7, 2025)

Because the Court has granted summary judgment to Defendants on all of Plaintiff's federal law claims and Plaintiff's state claims are governed by a different standard, this Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims. *See* 28 U.S.C. § 1367(c)(3); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("[W]here the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Tieu v. New York City Econ. Dev. Corp.*, 717 F. Supp. 3d 305 (S.D.N.Y. 2024) ("Having granted summary judgment to Defendants on all of [plaintiff's] federal claims, however, the Court declines to exercise supplemental jurisdiction over these state-law claims.")

Accordingly, Plaintiff's state law claims are DISMISSED without prejudice to renewal in state court.

## CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is GRANTED.  Defendants are entitled to judgment dismissing all federal claims with prejudice and

all state law claims without prejudice to renewal in state court. The Clerk of Court is respectfully requested to terminate the motion pending at docket entry 45 and to close this case.

**SO ORDERED.**

Date:  **March 31, 2025**
      **New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**